IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANINE KOVACHICK, )
    Plaintiff, )
     )
v. ) Civil Action No. 11-100
     )
VERIZON, )
    Defendant. )

MEMORANDUM

Gary L. Lancaster,     May 22, 2012
Chief Judge.

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiff, Janine Kovachick, alleges that defendant, Verizon,[1] breached a contract under which it was obligated to provide her with benefits offered in connection with a voluntary termination program. She seeks the money due her under the contract in addition to fees and costs. Defendant has filed a motion for summary judgment, arguing that Kovachick was not eligible for the benefits in question because she was no longer an employee. [Doc. No. 19].

For the reasons set forth below, defendant's motion will be granted.

---

[1] The complaint simply names "Verizon" as a defendant. Verizon Communications, Inc. answered the complaint and has participated as defendant. The court will hereinafter refer to the defendant as Verizon.

I. FACTUAL BACKGROUND

Verizon, as moving party, submitted a Concise Statement of Material Facts pursuant to Local Civil Rule 56(B)(1). LCvR 56(C)(1) requires the non-moving party to file a responsive statement, separately filed, "which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts . . . ." Ms. Kovachick failed to comply with this rule, and thus the material facts contained in Verizon's statement will be deemed admitted for purposes of summary judgment. LCvR 56(E).

A. Disability Benefits

Verizon initially hired Janine Kovachick in December, 1999, and she was continuously employed by Verizon until contracting health problems nearly ten years later. On May 6, 2009, Kovachick began a short-term disability leave. Pursuant to the terms of the Verizon Sickness and Accident Disability Plan for Mid-Atlantic Associates (the "Short-Term Plan"), to which Kovachick was subject, such benefits expire after 52 weeks. After that point, the employee must return to work or seek long-term disability benefits. If she does not return to work, her employment terminates.

Kovachick's long-term benefits were governed by the Verizon Long-Term Disability Plan for Mid-Atlantic Associates

2

(the "LTD Plan"). According to the LTD Plan, a disabled participant "upon the expiration of the Waiting Period and his/her termination of employment with the Company and its Affiliates, shall receive long term disability benefits under the Plan" provided her application is timely and approved. [Doc. 22, Ex. H, § 4.1]. Kovachick submitted an application for long-term disability benefits on March 28, 2011, which was provisionally approved when her short-term disability period expired. In July, 2010, the LTD benefits were formally approved and awarded retroactive to May 12, 2010. She continues to receive long-term disability benefits.

B. EISP Plan

Shortly after her short-term disability period ended, Kovachick received information from Verizon describing a "One-Time Enhanced Voluntary Separation Incentive" (the "EISP Offer"). The EISP Offer allowed employees to opt for voluntary termination in exchange for a number of financial incentives, including a lump sum bonus and the ability to draw upon Verizon's Enhanced Income Security Program immediately upon termination. The record does not reflect the exact date on which Kovachick received the offer package, but the cover letter was dated May 18, 2010. A disclaimer on one of the documents noted: "The plans, programs and policies are subject to the terms and conditions of the actual governing documents for the

3

plans, programs and policies and to the applicable collective bargaining agreements." [Doc. No. 22, Ex. A].

The actual governing document was the Verizon Income Security Plan for Mid-Atlantic Associates, As Amended and Restated Effective as of January 1, 2007 (the "EISP Plan"). According to the terms of the EISP Plan, it was maintained to "assist" employees who separated from service when circumstances resulted in an employee surplus. [Doc. No. 22, Ex. B, §§ 1.1, 2.2.3]. Several provisions in the EISP Plan dictate eligibility and participation procedures. Under section 2.1.1, "Covered Employees", it provides that: "The Plan covers regular full-time and part-time, non-salaried employees of Participating Companies . . . ." Section 2.3.1, "Separation from Service", provides: "To receive benefits under this Plan, an Eligible Employee, who is qualified under Section 2.2 . . . to apply to participate, and whose application to participate in the Plan has been accepted by the Participating Company, must separate from service on the date, and in the manner, specified by the Company or the Participating Company in its correspondence with the Eligible Employee." Acceptance, according to the EISP Plan, was to be determined by need and in order of seniority.

Along with the EISP Plan, employees received a Summary Plan Description, which provided: "Your application to voluntarily leave the service of the Company and receive

4

benefits under a Plan offer must be accepted by the Company." [Doc. 22, Ex. C, p. 9].

The EISP Plan also set forth the procedures for appealing an adverse benefit determination. The Verizon Employee Benefits Committee ("VEBC") serves as the EISP Plan's administrator. The EISP Plan bestows the VEBC with the discretion to "construe and interpret the provisions of the Plan" as well as to "enforce the Plan in accordance with the terms of the Plan . . . ." [Doc. No. 22, Ex. B, § 4.2]. The appeals administrator is given "sole authority to exercise discretion in the review and resolution of any initial appeal of a denied claim under the plan." [Doc. No. 22, Ex. B, § 4.3]. As such, the appeals administrator has "full discretion and authority" to "[i]nterpret the plan based on such Plan's provisions and applicable law, and make factual determinations about claims arising under such Plan[.]" Id. The Verizon Claims Review Unit ("VCRU") adjudicates claims for benefits, and the Verizon Claims Review Committee (the "VCRC") is the appeals administrator.

C. EISP Offer Package

The materials Kovachick received in the EISP Offer package in May, 2010, included, among other things, a form by which she could volunteer for the program, a fact sheet, and a "Q&A" sheet. The materials frequently referred to the EISP

5

Offer as an offer, and she could choose to participate by checking a box on the volunteer form marked "Accept" in large, bold font. However, the volunteer form then listed a series of qualifications under the heading: "By accepting this One-Time Enhanced Incentive Offer, I agree to and understand the following . . . ." The qualifications included: "My election to accept this One-Time Enhanced Incentive Offer may not be accepted if more senior employees who volunteer to participate relieve the surplus [of employees]" and "Associates who receive this One-Time Enhanced Incentive Offer in error are not eligible to volunteer." The accompanying fact sheet and Q&A sheet both stated that the effective date of voluntary termination would be July 3, 2010, "[i]f your election to leave is accepted[.]" [Doc. No. 22, Ex. A, p. 8].

Kovachick submitted the volunteer form, which was received by the Verizon Benefits Center on June 16, 2010, the deadline to volunteer. The Benefits Center determined that she was not eligible, and she did not receive benefits. Through counsel, she initiated this lawsuit.

Kovachick's attorney then submitted a letter, enclosing the complaint in this case, to the VCRC. Treating the letter as a claim for benefits, the VCRC referred it to the VCRU. The VCRU denied the claim, and the VCRC upheld the denial on appeal, by decision dated July 25, 2011. The VCRC determined

6

that Kovachick was not eligible for benefits because Verizon had not accepted her volunteer form, and that she had not, and could not have, terminated her employment in the required time and manner as she was no longer a Verizon employee. It noted that the intended design of Verizon's benefit plans was "that individuals cannot simultaneously receive LTD payments and severance payments." [Doc. No. 22, Ex. F, p. 7].

II.  LEGAL AUTHORITY

   A.  Summary Judgment Standard

Fed. R. Civ. P. 56(a) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's

function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and the defendants are entitled to summary judgment as a matter of law.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.

B. Administrator Decision

Where, as here, a plan administrator has the discretionary power to construe the terms of a plan or to determine who is eligible for benefits, the court will review the administrator's decision according to a deferential "arbitrary and capricious" standard. Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011). The court will overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (internal quotation omitted).[2] Because the court's review is narrow, "'the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits.'" Id. (internal quotation omitted). Therefore, the court will not disturb an administrator's interpretation "if reasonable." See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).

In determining whether the administrator abused its discretion, the court must consider a number of factors, including whether a structural conflict of interest exists. Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 526 (3d

---

[2] The arbitrary and capricious and abuse of discretion standards of review are essentially identical in ERISA cases. Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 n.2 (3d Cir. 2011).

9

Cir. 2009). Such a conflict exists where a plan is unfunded and the employer both funds and evaluates claims. Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008); Firestone, 489 U.S. at 105.

Other factors are highly case-specific. Miller, 632 F.3d at 845. The United States Court of Appeals for the Third Circuit has outlined "a series of helpful factors", including: "(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." Moench v. Robertson, 62 F.3d 553, 566 (3d Cir. 1995) (internal quotation omitted). However, procedural irregularities or a structural conflict will not "tip[] the scales" in the face of "an abundance of evidence . . . to support the denial[.]" Miller, 632 F.3d at 846 (quoting Schwing, 562 F.3d at 526).

III. DISCUSSION

A. Preemption

Plaintiff has consistently maintained this action reflects a common law breach of contract claim rather than one

governed by ERISA. However, state law claims that "relate to" an employee benefit plan governed by ERISA are completely preempted by the statute. 29 U.S.C. § 1144(a); Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 333 (2003). This includes common law breach of contract claims related to the processing of a benefits claim. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987), overruled in part by Ky. Ass'n of Health Plans, 538 U.S. 329; Weinstein v. Paul Revere Ins. Co., 15 F. Supp. 2d 552, 559 (D.N.J. 1998). ERISA determinations instead are subject to federal common law rules of contract interpretation and formation. Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 75 (3d Cir. 2011).

ERISA broadly covers all employee benefit plans. Senior Exec. Benefit Plan Participants v. New Valley Corp., 89 F.3d 143, 148 (3d Cir. 1996). The terms of the plan itself describe it as an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1). [Doc. 22, Ex. B § 4.9.] Therefore, plaintiff's state law claims are preempted, and VCRC's determination that the EISP Offer was an invitation to apply, rather than an offer, will be evaluated under ERISA and therefore subject to the appropriate deference.

B. VCRC Decision

Verizon's claims and appeals process is formally separated from the initial application process. [Doc. No. 22,

11

Ex. B, § 4.5]. Because the final discretion for benefits eligibility standards is properly conferred on the VCRU and VCRC, de novo review is inappropriate. See Saunders v. Verizon Commc'ns Inc., No. 04-34, 2006 WL 1651043 at *8 (N.D. W. Va. June 15, 2006). However, the plan is unfunded, and the benefits are paid from Verizon's general assets. [Doc. No. 22, Ex. B, § 4.7]. This presents a conflict of interest that the court must account for in determining the reasonableness of the VCRC's decision. Saunders, 2006 WL 1651043 at *9.

VCRC determined that Kovachick was not eligible to receive benefits under the EISP Plan because, as a condition of receiving long-term disability benefits, her employment had ended upon the expiration of her 52-week waiting period. According to the VCRC, Kovachick ceased to be an employee – and thus a Covered Employee under the EISP – at that time. Underlying this reasoning was the conclusion that the EISP Offer was an invitation to apply, not an offer, and it did not obligate Verizon to pay benefits to an ineligible applicant.

VCRC's determination that individuals receiving long-term disability benefits are ineligible was not arbitrary and capricious. It is consistent with the goals of the EISP Plan, which is intended to encourage voluntary separations at times of employee surplus through financial incentives. It is also entirely consistent with the terms of the EISP Plan, which

provides that it "covers regular full-time and part-time, non-salaried employees." Under the terms of the LTD Plan, long-term benefits do not commence until the expiration of the participant's 52-week waiting period and her "termination of employment with the Company and its Affiliates[.]" Kovachick purposefully availed herself of this plan when she applied for long-term benefits on March 28, 2010. Although her approval in May was only provisional, the final approval and termination date were effective retroactive to May 12, 2010. Moreover, had she not been approved, her employment would have been terminated anyway, subject to the terms of the Short-Term Plan. VCRC was entitled to rely on the Short-Term and LTD Plans as proof that she was no longer an employee.

In the absence of any suggestion that the EISP Plan is not being interpreted consistently, that the requirements of ERISA were not followed, or that such an interpretation renders anything in the plan meaningless, the court cannot find this interpretation was in error.

The VCRC also found that the EISP Offer was merely an invitation to apply, which required a further manifestation of assent by Verizon to form an enforceable contract. In a case similar to this one, the United States Court of Appeals for the Third Circuit found that a jury could plausibly find an offer where nothing in the application package "suggest[ed] that

13

anything was required in order to take advantage of the plan other than signing and returning the application." Haeffele v. Hercules Inc., 839 F.2d 952, 956 (3d Cir. 1988). That is not the case here. Although in places it was couched in the language of an offer, the EISP Offer and accompanying material contained disclaimers adequate to convey to an applicant that participation was still subject to Verizon's approval. It stated in plain, straightforward terms that the election would not take effect unless it was accepted by Verizon. The acceptance form itself clearly indicated that not all recipients were necessarily eligible to participate. This was sufficient to condition participation in the EISP Plan on eligibility as it was defined therein, limited to current employees. In addition, the package included materials stating, again in plain terms, that EISP coverage ended when "[y]ou terminate employment, including retirement." VCRC's conclusion that Kovachick did not accept a valid offer was not arbitrary and capricious. This court will not disturb it.

The VCRC further found that, because Kovachick's employment had terminated effective May 12, 2010, she did not, and could not, comply with the terms of the EISP Offer which required severance of employment no earlier than July 3. As its determination that Kovachick had terminated her employment on

14

May 12 was reasonable based on the LTD Plan, this ground was also not arbitrary and capricious.

IV. <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for summary judgment will be granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANINE KOVACHICK,<br>    Plaintiff,<br><br>v.<br><br>VERIZON,<br>    Defendant. | )<br>)<br>)<br>) Civil Action No. 11-100<br>)<br>)<br>)<br>) |

## ORDER

AND NOW, this 22 day of May, 2012, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 19] is GRANTED.

The Clerk of Courts is directed to mark this case CLOSED.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record